**John CURTH, Plaintiff,**

**v.**

**FARADAY, INC., and Local 1246 of the International Brotherhood of Electrical Workers, Defendants.**

**Civ. A. No. 5-70333.**

United States District Court,
E. D. Michigan, S. D.

Sept. 30, 1975.

Dane C. Nelson, Baker, Durst, Marr & Nelson, Adrian, Mich., for plaintiff.

Gregory J. Forsthoefel, Beardsley, Forsthoefel & Crause, Tecumseh, Mich., for Local 1246.

John A. Entenman, Dykema, Gossett, Spencer, Goodnow & Trigg, Detroit, Mich., for Faraday, Inc.

## MEMORANDUM OPINION AND ORDER

JOINER, District Judge.

This is an action by an employee for damages under section 301 of the Labor Management Relations Act. The plaintiff alleges that he was wrongfully discharged from his job as a "hand trucker" on January 30, 1973. Defendants, the employer and local union, move independently, but on substantially the same grounds, to dismiss the complaint and for summary judgment. The motions are presented on the basis of the pleadings, affidavits, exhibits, and plaintiff's deposition.[1] Three grounds are set forth: (1) that plaintiff failed to exhaust the contractual grievance procedure; (2) that he failed to exhaust the intra-union grievance procedure; and (3) that he failed to allege a breach of the duty of fair representation. The parties had ample opportunity to brief each of these issues, and they argued the issues extensively in court.

Curth maintains that he was suspended for three days by his foreman because he paused to listen to and answer a question asked by another employee as Curth passed by in the course of performing his duties. A meeting was promptly called of Curth, the foreman, the union president, and the union steward to discuss the reasons for the suspension. During the course of this meeting, Curth responded to certain remarks made by his foreman, which do not appear in the record before the court, that "those remarks ought to get a man knocked on his ass." He made no threatening gestures and left the room immediately after uttering these words. His uncontradicted version of the facts of his dismissal are taken by this court as true for the purpose of considering the motion for summary judgment. *See Day v. UAW, Local 36*, 466 F.2d 83 (6th Cir. 1972).

It is undisputed that the union endorsed Curth's grievance as a meritorious one, yet failed to exhaust the grievance procedure. Instead, it processed the grievance up to the point of arbitration,[2] and then determined not to

---

1. Affidavits were submitted by John P. Manders, defendant Faraday's plant manager; Everett Baker, president of defendant local union at the time of this dispute; Thomas E. Malone, vice president of the International Brotherhood of Electrical Workers, Sixth District, at the time of this dispute; and Robert Baker, an attorney for plaintiff. Supporting documents made a part of this record include article 27 of the IBEW Constitution; article VIII of the then governing collective bargaining agreement between the defendants; the defendant local union's "Employee's Grievance" report; and a statement made by Everett Baker and authenticated by plaintiff in his deposition.

2. The exact extent of the union's processing of the grievance is in dispute. All parties concede that there was no arbitration, the final step in a 5-step process. Curth contends that the union also failed to hold a step 3 conference with the employer. He does not contest the occurrence of any other

proceed further. The union gave two reasons for this decision: (1) A representative from the international who attended the step 4 meeting advised the local that the arbitrator probably would decide against Curth; and (2) the local was suffering from a shortage of funds.

It is also undisputed that Curth failed to exhaust his mandatory internal union procedure by failing to appeal to the international from the local's refusal to arbitrate.[3] Curth's explanation is that he had relied upon assurances by Everett Baker, the local union president, that Baker would "see what International could do for me."[4] After the local's decision against arbitration, he conferred with several other local union officials, all of whom agreed that he had a meritorious grievance, and all of whom failed to advise him of the necessity of an appeal. He also claims that he was never given a copy of the international's constitution and had no idea that he was supposed to press an appeal. Curth described his relationship with the local union's president as friendly throughout.

At the heart of this lawsuit is Curth's argument that the local union breached its duty of fair representation in refusing to arbitrate a grievance of acknowledged merit because its treasury was low and the international had advised it that the arbitrator would likely decide adversely to the grievant.

■ The standard by which this allegation must be measured was set forth in *Vaca v. Sipes,* 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967). "A breach of the statutory duty of fair representation occurs only when a union's conduct toward a member of the collective bargaining unit is arbitrary, discriminatory, or in bad faith." *Id.* 190, 87 S.Ct. 916. Plaintiff asserts that because the union never before had refused to process a grievance for lack of funds, it acted in bad faith. But even if we were to accept this allegation as true, it does not establish a breach. That an explanation for a recurring course of conduct is offered for the first time at a late date does not detract from its *bona fides*; that may be the first time the explanation applies. The burden of proving that the facts were otherwise was on the plaintiff, and he has shown no facts indicating possible bad faith.

■ Plaintiff has not argued that the union's decision was discriminatory. Quite to the contrary, he candidly admitted that his relationship with union president Baker was a friendly one. His only remaining alternative is to prove that the union's action was arbitrary or perfunctory. *See Ruzicka v.*

---

steps in the processing of his grievance. Curth also contends there is another issue of fact about whether the employer answered timely the union's request for a step 4 meeting. However, both defendants swear by affidavit that an answer was timely made and that all steps of the grievance procedure short of arbitration were followed. This affidavit is dispositive in the absence of an opposing affidavit. *See Cruise v. Bruggeman,* 508 F.2d 415 (6th Cir. 1975). Even if the occurrence of a step 3 meeting could be taken as presenting an issue of fact, however, the dispute is not material, because it is clear from the record that the union did attempt to resolve the grievance by going through the steps of the grievance procedure. If these efforts failed to culminate in a formal conference at each step, that failure was not enough in itself to alter the decision of this court.

For the reasons set forth above, it is unnecessary to consider Curth's additional charge that the union and employer conspired to agree that a step 3 meeting was held. In addition, it may be noted that there is no evidence of an agreement between the employer and union. At most, there are the sworn affidavits of employer and union that three meetings took place, while union records reveal only two.

3. The IBEW Constitution required:
   "Every member, officer, Local Union, Railroad Council, System Council or other subordinate body shall be obliged to exhaust all remedies provided for in this Constitution, including all available appeals, before starting an action in a court of law against the I.B.E.W., L.U. or other subordinate body." IBEW Const., art. 27, § 1(23).
   This appeal was to be filed within 45 days of the action complained of. *Id.* § 12.

4. Deposition of John Curth, March 10, 1975, at 35.

General Motors Corp., 523 F.2d 306 (6th Cir. 1975).

Vaca's "repeated references to 'arbitrary' union conduct reflects a calculated broadening of the fair representation standard." Beriault v. Super Cargoes & Checkers, ILWU, Local 40, 501 F.2d 258, 264 (9th Cir. 1974). See Duggan v. International Association of Machinists, 510 F.2d 1086, 1088 (9th Cir. 1975), cert. denied, 421 U.S. 1012, 95 S.Ct. 2417, 44 L.Ed.2d 680 (1975). Thus, an inexplicable failure to fully process a grievance, without a determination of its merit, has been held to be so negligent that it amounts to "arbitrary and perfunctory" handling. Ruzicka, supra. Cf. Beriault, supra; Sanderson v. Ford Motor Co., 483 F.2d 102 (5th Cir. 1973); Woods v. North American Rockwell Corp., 480 F.2d 644 (10th Cir. 1973); Griffin v. UAW, 469 F.2d 181 (4th Cir. 1972); De Arroyo v. Sindicato de Trabajadores Packinghouse, AFL-CIO, 425 F.2d 281 (1st Cir.), cert. denied, 400 U.S. 877, 91 S.Ct. 117, 27 L. Ed.2d 114 (1970).

■ What constitutes arbitrary treatment depends upon the facts of the particular case. Here, the grievant was discharged from employment—"the industrial equivalent of capital punishment." Griffin, supra, at 183. It is imperative, in such a case, that the union's decision against arbitration be founded on objective and rational criteria.

■ This court is faced squarely with the problem of applying Vaca's standard to what is assumed to be a meritorious claim. It is well established that an employee has no right to require the union to arbitrate a grievance that has no merit. Whitten v. Anchor Motor Freight, Inc., 521 F.2d 1335 (6th Cir. 1975); Lewis v. Magna American Corp., 472 F.2d 560 (6th Cir. 1972). But the meritoriousness of the grievance is not the test of fair representation. Vaca, supra, at 191; Woods, supra, at 648; Turner v. Air Transport Dispatchers Association, 468 F.2d 297, 299 (5th Cir. 1972); Sarnelli v. Amalgamated Meat Cutters, Local 33, 457 F.2d 807, 808 (1st Cir. 1972) (per curiam). It suffices that the union decides in good faith and on the basis of objective, rational criteria that the grievance lacks sufficient merit to justify the expense of arbitration.

■ If plaintiff had set forth facts showing that the union did have enough funds to arbitrate this grievance without jeopardizing its financial stability, we would have had a different case to consider. In this case, however, the union's decision not to arbitrate was fair and rational. Until advised by a representative from the international that arbitration was likely to be futile, the local diligently proceeded through the steps of the grievance procedure.[5] Having been so advised, however, and knowing that the treasury was already low, the local decided against arbitration. This decision may not have been wise; certainly, it was harsh. But it was based on rational and objective grounds, and therefore it cannot be deemed arbitrary. Cf. Encina v. Tony Lama Boot Co., 448 F.2d 1264 (5th Cir. 1971). It must be remembered that the expense of arbitration was a foremost consideration in the Supreme Court's determination of the scope of the duty of fair representation. See Vaca, supra, at 192–93.

■ A union may properly decide that circumstances sometimes require a choice between the interests of a single member and the interests of the union as a whole. Such decisions are even more difficult when substantial interests of one group of employees must be measured against equally substantial interests of another group. Nevertheless, such determinations must be made, and the union does not breach its duty of fair representation by deciding on the basis of rational and objective criteria. See Ford Motor Co. v. Huffman, 345 U. S. 330, 73 S.Ct. 681, 97 L.Ed. 1048 (1952).

5. See Footnote 2, supra.

The holding of this court is that the union did not breach its duty of fair representation in refusing to arbitrate a grievance which it believed to be meritorious enough to warrant prosecution through several steps of the grievance procedure, but not so persuasive as to warrant arbitration, in light of the high cost of arbitration and the financial difficulties of the local.[6] Such a decision is not arbitrary, perfunctory, or even negligent.

Having failed to prove a breach of the union's duty, plaintiff is barred from proceeding further. It is therefore unnecessary to decide whether his union's failure to properly inform him of his duty to exhaust estops it from asserting this argument. *Cf. Day v. UAW, Local 36*, 466 F.2d 83 (6th Cir. 1972).

Defendants' motions for summary judgment are granted.

So ordered.

---

6. In *Hines v. Teamsters, Local 377*, 506 F.2d 1153 (6th Cir. 1974), *cert. granted on other grounds*, 421 U.S. 928, 95 S.Ct. 1654, 44 L. Ed.2d 85 (1975), the court refused to allow summary judgment for a defendant union where the plaintiff had shown facts from which bad faith might be inferred *and also* facts from which a discriminatory intent might be inferred. In this case, plaintiff has shown only that the union refused to arbitrate a claim which it believed was meritorious—a fact which, standing alone, supports neither an inference of bad faith nor one of discriminatory intent. This court does not read *Hines* so broadly as to bar this summary judgment.